709 P.2d 570

The STATE of Arizona, ex rel. Robert
K. CORBIN, Attorney General,
Plaintiff/Appellant,

v.

TUCSON PUBLIC AUCTION, INC., dba
Broadway RV Center, an Arizona Cor-
poration; Jimmy GMC, Inc., an Arizo-
na Corporation; Harold Laz and Rose
Laz, husband and wife; and Reynaldo
Valencia and Bryn Valencia, husband
and wife, Defendants/Appellees.

No. 2 CA–CIV 5332.

Court of Appeals of Arizona,
Division 2, Department A.

Aug. 1, 1985.

Rehearing Denied Sept. 13, 1985.

Review Denied Nov. 19, 1985.

Robert K. Corbin, Atty. Gen. by Patrick
M. Murphy and John F. Kelly, Tucson, for
plaintiff/appellant.

Johnson, Dowdall & Price by Richard J.
Dowdall, Tucson, for defendants/appellees.

## OPINION

BIRDSALL, Presiding Judge.

This appeal is from a judgment in favor
of the defendants following a four-day trial
to the court sitting without a jury. Follow-
ing an investigation, the attorney general
filed a complaint in superior court seeking
an injunction and other appropriate relief
as provided in A.R.S. § 44–1528. The de-
fendants were charged with violations of
the Arizona Consumer Fraud Act, A.R.S.
§§ 44–1521 thru 34.

The trial court made findings of fact and
conclusions of law as requested pursuant
to Rule 52(a), Rules of Civil Procedure, 16
A.R.S. (Supp.1984). We cannot set aside
such findings unless clearly erroneous.
There is also implied any additional finding
necessary to support the judgment if rea-
sonably supported by the evidence and not
in conflict with the express findings. *Co-
ronado Co. v. Jacome's Department
Store, Inc.*, 129 Ariz. 137, 629 P.2d 553
(App.1981).

The violations charged by the state arose
out of separate sales made by the appel-
lees, Tucson Public Auction, Inc., and Jim-
my GMC, Inc. The individual appellee, Ha-
rold Laz, an officer and director of the
corporate appellees, was involved in each
sale as was the other individual appellee,
Reynaldo Valencia, a salesman/employee.

The first transaction occurred in February 1982. Mr. and Mrs. Michael Grippe purchased a new 6.2 diesel GMC pickup truck from the appellees. They exchanged their own gasoline-powered Ford pickup, which they had been using to tow their 34-foot Holiday Rambler fifth-wheel house trailer. They wanted the new truck for the same use and were told by the appellees that the diesel would get better mileage and tow better than their Ford. They paid $25,000 for the diesel truck, less $10,000 allowance for the Ford and a $2,000 rebate.

The second transaction involved the sale of a 21½ foot 1982 Mobile Traveler on May 12, 1982, to Mr. and Mrs. Virgil Critchlow. They bought the self-contained new motor home for $44,900 and were allowed $23,500 for their 31–foot 1974 Airstream trailer and 1977 Ford pickup truck. They were told by the appellees that they would probably get 14–15 miles per gallon with the new unit.

The appellant contends on appeal that, in the Grippe sale, the towing capability of the diesel truck and the existence of the $2,000 rebate were both misrepresented, and in the Critchlow sale, the fuel efficiency and the existence of an immediate buyer for the trade-in were both misrepresented.

These issues, as presented by the appellant, all involve questions of fact. It is therefore necessary for us to examine the findings of fact, the conclusions of law, and the evidence by the tests we have already recognized. Such a review is extremely difficult because the findings contain many (seven in all) statements that someone "testified" to such-and-such. For example, in finding No. 3 of the Grippe findings: "The Grippes testifed that Mr. Laz told them that the diesel would get fifteen to eighteen miles per gallon towing ..." Does this mean that the trial court found Mr. Laz actually told them that; or does it mean that the trial court rejected this testimony; or does it mean that the trial court could not decide whether to accept or reject the testimony? It is not a finding of ultimate fact. It is only a finding that the testimony was given by that witness. Such a statement is of no assistance to anyone,

much less the appellate court. We will disregard these statements except insofar as they are evidence in the case.

Fortunately we are able to still accept the other findings made by the trial court and review the record without a remand to correct those findings. Likewise, although we find error requiring reversal, the error does not require remand for the purpose of making additional findings as in *Higdon v. Evergreen International Airlines, Inc.,* 138 Ariz. 163, 673 P.2d 907 (1983).

In the Grippe sale the trial court found that both Mr. Laz and Mr. Valencia told the buyers that the diesel would get better mileage than the Ford and would satisfactorily tow their trailer. The evidence clearly supports this finding. The trial court then found, in conclusion of law No. 1 in Grippe, that "The Court cannot find from the evidence that Mr. and Mrs. Grippe and the Attorney General have proven to the Court by a preponderance of the evidence that the 6.2 diesel did not perform better than their Ford they traded in." This negative finding is clearly erroneous. The Grippes testified that they got seven to nine miles per gallon with the Ford and that the diesel did not give them any better mileage, much less 15 to 18 miles per gallon, as represented. On one test they got 8.7 miles per gallon with the diesel.

However, it is with the misrepresentation concerning towing capability that the court's finding is even more clearly erroneous. The Grippes called as an expert witness Mr. Gerald Rosenbluth. His credentials included a master's degree in industrial design technology and many years of practical experience in the automotive and trucking industry. He testified that the diesel was not designed to pull the equivalent of the Holiday trailer. Rather it was designed to carry a slide-in camper. The diesel could pull a total load of only 12,000 pounds, whereas the truck and Holiday trailer weighed approximately 16,237 pounds. He testified that this additional weight would affect both towing and fuel efficiency. His testimony was corroborated by the deposition testimony of Robert

Shaw, a former employee of the corporate appellees or their predecessors. He testified also that the salesman would have easily found the information in the GMC Trailering Guide.

No evidence was presented by the appellees to refute these facts. While the trial court could have discounted the testimony of the Grippes, it could not have rejected the expert's analysis of the GMC specifications for its own truck.

We believe the trial court went wrong for another reason and in that way was misled in both the Grippe and Critchlow transactions. The trial court made the following additional findings:

(In Grippe):

"16. That, based on the testimony of the expert witness produced by the State, Mr. Rosenbluth, the question of gas mileage and towing capabilities is to a great extent subject to subjective analysis."

(and in Critchlow):

(conclusion of law) "3. That the question of gas mileage is in many respects so subjective and is so subject to so many variables that it is very difficult to make a case of fraud and misrepresentation in regard to statements having to do with gas mileage."

Grippe finding No. 16 is clearly erroneous. Mr. Rosenbluth did not testify that questions of mileage and towing capabilities were subjective. On cross-examination, he agreed, with reference to towing capacity of the diesel, that there may be a safety factor included in the gross weight calculations so that a vehicle is not loaded to its total maximum capability. He illustrated this by saying the 12,000 pounds rated capacity for the 6.2 diesel might be 12,010 without significant difference. He also agreed that Environmental Protection Agency (EPA) fuel economy estimates were estimates. But we find nothing in his testimony from which the court could make finding No. 16.

■ We believe the other findings and conclusions quoted evidence a serious misconception that fuel mileage and/or towing capability cannot be the subject(s) of actionable misrepresentation under the consumer fraud act. We find no basis, factual or legal, for such a conclusion. In the cases at bench, both aspects were material to the Grippes and mileage was material to the Critchlows. In the sale of passenger vehicles, the EPA estimates of fuel economy must be posted on the vehicle by federal law. See 15 U.S.C.A. §§ 2001, 2006. Although not required on trucks or motor homes, estimates of fuel economy can reasonably be most important to a consumer. If a seller takes it upon itself to make representations of fuel economy (or towing capability) with the intent that a prospective buyer rely on the representations in connection with a sale, then the representations must be reasonably true or the seller will be in violation of A.R.S. § 44–1522(A). That section states:

"The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice."

■ In the instant case the appellees sold the Grippes a truck which was not even meant to tow their trailer. And in the Critchlow transaction, the appellees represented that the fuel economy of the mini-motor home would be twice what it turned out to be. These were consumer fraud violations.

There is another deception in the Grippe transaction which we need to discuss. The price for the diesel truck was not one which had been set by the companies. When the

216

Grippes inquired about the truck ·and, subsequently, its price, the salesman, Mr. Valencia, quoted them $25,000. By his own testimony, he arrived at that price by adding $5,000 to $6,000 to the price of a gas truck he had learned about at a sales meeting two days before. The gas truck sold for $16,000 to $17,000. This would have produced a price of $21,000 to $23,000. To the top price of $23,000, he must then have added $2,000. This then became the rebate in the final analysis.

Valencia told the Grippes they could have the rebate only if they purchased that day. Exhibit No. 59, admitted at trial, was a memo dated February 2, 1982, from managment. it said: "Also use the $2,000 rebate on new merchandise at your descretion." ·Thus, Valencia practiced a deception which induced the Grippes to make a hasty purchase which they might otherwise not have made.

In the Critchlow sale, there was also a second misrepresentation, that the appellees needed the trade-in that evening because an immediate sale could be consummated with a buyer. The trial court found, as a legal conclusion, that this was not a fraudulent misrepresentation. The findings and evidence are in conflict. Apparently the trial court believed that Valencia did, in fact, have a buyer. Although we disagree with the legal conclusion, we are bound by the finding.

We therefore reverse the judgment and direct the trial court to enter judgment for the state. We remand for the trial court to grant injunctive relief, civil penalties, and damages. We grant attorney's fees on appeal pursuant to A.R.S. § 44–1534. The state is directed to file a statement in compliance with Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S. (Supp. Pamph.1984).

Reversed and remanded with directions.

HOWARD and FERNANDEZ, JJ., concur.